**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LIBERTY SURPLUS INSURANCE** | : | |
| **CORPORATION,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO. 14-1066** |
| **v.** | : | |
| | : | |
| **MCFADDENS AT BALLPARK LLC,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**Tucker, C.J.**                                                        **July 9, 2015**

Presently before the Court are cross-motions for summary judgment filed by Plaintiff Liberty Surplus Insurance Corporation ("Liberty") and Defendant McFadden's at Ball Park LLC ("McFadden's") and the responses filed by each party. Liberty brings this declaratory judgment action pursuant to 28 U.S.C. § 2201 seeking declaratory relief regarding its duty to indemnify its insured, McFadden's. Upon careful consideration of the parties' briefs, exhibits, and all other papers herein, and for the reasons set forth below, this Court ***grants*** Liberty's Motion for Summary Judgment (Doc. 22) in its entirety and ***denies*** McFadden's Motion for Summary Judgment (Doc. 23) in full.

**FACTUAL BACKGROUND**

Liberty brings this declaratory judgment action concerning its duty to indemnify McFadden's for an arbitration award in an underlying lawsuit brought in the Court of Common Pleas of Philadelphia County by a patron of McFadden's, Justin Dunbar. Liberty issued an insurance policy to McFadden's for the policy period of November 3, 2010 to June 1, 2011 (the "Policy"). Liberty Compl. ¶ 6.

The Policy

The Policy included Commercial General Liability Coverage ("CGLC") and Liquor Liability Coverage ("LLC"). The CGLC provided, in relevant part:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>       **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>       **(2)** Our rights and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A. . . .
>     **b.** This insurance applies to "bodily injury" and "property damage" only if:
>       **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .
> **2. Exclusions**
>     This insurance does not apply to:
>     **a. Expected Or Intended Injury**
>     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

Id. at Ex. A, CG00011207 at 1. Section V of the CGLC defined "bodily injury" as "sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at Ex. A, CG00011207 at 12. The term "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at Ex. A, CG00011207 at 13. The CGLC also had a limit of $1,000,000 for each occurrence for damages under Coverage A. See id. at Ex. A, CG00011207 at 9.

The LLC provided, in pertinent part:

**SECTION I – LIQUOR LIABILITY COVERAGE**
1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. . . .
      **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements. . . .
   b. This insurance applies to "injury" only if:
      **(1)** The "injury" occurs during the policy period in the "coverage territory" . . . .
   c. **Exclusions**
      This insurance does not apply to:
      a. **Expected Or Intended Injury**
      "Injury" expected or intended from the standpoint of the insured. . . .

Id. at Ex. A, CG00331207 at 1. Section V of the LLC defined "bodily injury" as "bodily injury,

sickness or disease sustained by a person, including death resulting from any of these at any time."

Id. at Ex. A, CG00331207 at 5. The LLC also defined "injury" as "damages because of 'bodily

injury' and 'property damage,' including damages for care, loss of services or loss of support." Id.

Section III of the LLC provided that the aggregate limit that Liberty would pay "for all 'injury' as

the result of the selling, serving or furnishing of alcoholic beverages" is $1,000,000. Id. at Ex. A,

CG00331207 at 3.

The Policy contained an endorsement entitled "Defense Costs Within The Limits of

Insurance," which amended both the CGLC and LLC. This amendment stated, "Any costs

incurred by [Liberty] due to [Liberty's] right and duty to defend the insured against any 'suit'

seeking damages covered by this insurance are included within the applicable limit of insurance

-3-

described in Section III – Limits of Insurance." Id. at Ex. A, CGL-1415-1210. Thus, defense costs were included within the limits of insurance.

The Policy included an amendment for an assault and battery sublimit ("A&B Endorsement") as follows:

> a. The following replaces the Expected Or Intended Injury exclusion in Section 1, 2. Exclusions:
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. However, this exclusion does not apply to "bodily injury" or "property damage" included in the "assault or battery hazard."

Id. at Ex. A, CGL-1414-1210 at 1. "Assault or battery hazard" was defined as "the use of reasonable force to protect persons or property, including reasonable force to eject or exclude any person from the insured's premises or restore order at the insured's premises." Id. at Ex. A, CGL-1414-1210 at 2. The A&B Endorsement stated that the most Liberty would pay for bodily injury included in the assault or battery hazard and all expenses related to Liberty's duty to defend against any claims or suit seeking those damages was $200,000. Id. at Ex. A, CGL-1414-1210 at 1.

The A&B Endorsement also amended the LLC section of the Policy as follows:

> a. The following replaces the Expected Or Intended Injury exclusion in Section 1, 2. Exclusions:
>
> "Injury" expected or intended from the standpoint of the insured. However, this exclusion does not apply to "bodily injury" or "property damage" included in the "assault or battery hazard."

Id. As in the amendment to the CGLC, the amendment to the LLC provided a sublimit of $200,000 for "injury" included in the "assault or battery hazard" and all expenses related to Liberty's duty to defend the insured. Id. at Ex. A, CGL-1414-1210 at 2. The same definition for "assault and battery hazard" in the amendment to the CGLC applied. See id.

The A&B Endorsement also amended the limits of insurance for both the CGLC and LLC. The aggregate limit for assault and battery was changed to $200,000. See id. at Ex. A, CGL-1417-1210 at 1. This was the most that Liberty would pay for all "injury arising out of 'assault and/or battery' as the result of the selling, servicing or furnishing of alcoholic beverages; and/or damages because of 'bodily injury' or 'property damage' and medical expenses attendant thereto, arising out of 'assault and battery' as the result of all 'occurrences'. . ." Id.

The A&B Endorsement added a provision defining "assault and/or battery":

1.  actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, his "employees", patrons or any other person;
2.  the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or
3.  the negligent:

    a.    employment;
    b.    investigation;
    c.    supervision;
    d.    training; or
    e.    retention

of a person for whom any insured is or ever was legally responsible and whose conduct is described by 1. or 2. above.

Id. at Ex. A, CGL-1417-1210 at 2.

Pursuant to its obligations under the Policy, Liberty defended McFadden's in two underlying state court lawsuits: Justin Dunbar v. McFadden's at the Ball Park, LLC, et al. and Brian Dwyer v. McFadden's at Ball Park, LLC, et al. Id. at ¶ 14; Liberty's Mem. of Law in Support of Its Mot. for Summ. J. at 1.

The Dunbar Action

On or about September 20, 2012, Justin Dunbar filed a complaint in the Court of Common Pleas of Philadelphia County ("Dunbar action") against McFadden's. See Liberty Compl. at Ex. B,

Dunbar Compl. Mr. Dunbar alleged that on February 25, 2011, he was a business invitee at McFadden's when a manager asked him to leave. After he left the bar, he exchanged words with the manager and several security staff members from the bar. In his original complaint, Mr. Dunbar alleged that the exchange concluded "with two to four bouncers from the bar assaulting [him], kicking him, knocking him to the ground, and ultimately destroying [his] leg and ankle with a martial-arts style stomp." Dunbar Compl. ¶ 15. Mr. Dunbar characterized the confrontation between the security staff and him as a "vicious attack" and brought claims against McFadden's for negligence, assault and battery, violation of the Pennsylvania Dram Shop Act, 47 P.S. § 4-493, et seq., and punitive damages. Id. at ¶ 18.

Mr. Dunbar amended his complaint twice on May 8, 2014 and June 18, 2014. In his Second Amended Complaint, Mr. Dunbar pleaded the following facts:

> 18. . . . said bouncer attempted to control Plaintiff to the ground but used improper techniques, which resulted in the bouncer horse-collar tackling Justin and injuring Justin.
> 19. After Justin was improperly brought to the ground, Justin got up and the confrontation continued.
> 20. As the confrontation continued, Justin was taken to the ground by a different bouncer.
> 21. During this second take down, the bouncer used improper technique and failed to control his body.
> 22. This resulted in the bouncer's knee swinging out and landing on Justin's ankle, causing Justin devastating injuries as more fully described below.

McFadden's Mot. for Summ. J. at Ex. A ¶¶ 18 – 22, Dunbar Second Am. Compl. ¶¶ 18-22. Mr. Dunbar also alleged that he was served excessive amounts of alcohol while visibly intoxicated. Dunbar Second Am. Compl. ¶ 13. As a result of the altercation between Mr. Dunbar and security staff, Mr. Dunbar claims that he sustained serious injuries including a shattered right leg and ankle, trimalleolar open ankle fracture, internal and neurological injuries, and chronic pain. Id. at ¶ 26.

Mr. Dunbar's Second Amended Complaint asserted claims against McFadden's for negligence, assault and battery, and punitive damages.

<u>The Dwyer Action</u>

On or about February 6, 2013, another patron of McFadden's, Brian Dwyer, filed a Complaint in the Court of Common Pleas Philadelphia County ("Dwyer action") alleging that on December 17, 2010, McFadden's security personnel requested that he leave the premises. <u>See</u> Liberty Compl. at Ex. C, Dwyer Compl. Mr. Dwyer claimed that he was "attacked" by McFadden's security personnel who fractured his left fibula in a physical altercation. Dwyer Compl. ¶¶ 9-10. Mr. Dwyer brought claims against McFadden's for assault, battery, and negligence.

<u>Settlement Discussions</u>

On November 19, 2013, Liberty advised Messrs. Dunbar and Dwyer of the $200,000 eroding sublimit provided by the A&B Endorsement insurance liability limits. Mr. Dwyer expressed interest in resolving his case for half the balance of the remaining sublimit after a reduction for defense costs: $50,000. Liberty contacted Mr. Dunbar's attorney and offered the remaining $50,000 to settle the Dunbar action. However, Mr. Dunbar rejected Liberty's offer and instead requested to resolve the litigation for $950,000. <u>See</u> McFadden's Resp. to Liberty's Mot. for Summ. J. ¶ 24; <u>id.</u> at Ex. E. Liberty avers that payment of continuing defense costs in the Dunbar action exhausted the remaining $50,000 balance of the $200,000 assault and battery sublimit. Liberty's Mot. for Summ. J., Statement of Relevant Facts ¶ 25. McFadden's admits that payment of defense costs plus the Dwyer settlement exceeded $200,000. McFadden's Resp. ¶ 25.

<u>The Arbitration Award</u>

The Dunbar action proceeded to binding arbitration on October 8, 2014. The arbitration was subject to a binding high/low award with $350,000 being the lowest recovery. The neutral arbitrator found McFadden's partially liable for Mr. Dunbar's injuries as follows:

13.   [T]he Arbitrator finds that the Defendants were negligent in their dispensing of alcoholic beverages to the plaintiff . . .

14.   The record is replete with instances of inappropriate and, probably, unlawful, conduct of the licensee with respect to their service of liquor to the plaintiff and others.

15.   As a direct consequence of McFadden's conduct, plaintiff became inebriated (an issue not contested by defendant), and such inebriation, along with their security practices were substantial factors in bringing about the harm the plaintiff sustained.

. . . .

17.   The negligence of the parties is assessed as follows:
a)      Plaintiff Justin Dunbar – 40%
b)      Defendants McFadden's – 60%

<u>Id.</u> at Ex. B ¶¶ 13-15, 17, Mixed Findings of Fact, Conclusions of Law, and Arbitration ¶¶ 13-15, 17 (hereinafter "Arbitration Award"). The arbitrator awarded Mr. Dunbar $300,000, but increased the amount payable to $350,000 conforming to the high/low agreement. <u>Id.</u> at 7.

<u>Liberty Litigation</u>

Liberty seeks declaratory judgment that, consistent with the limitations in its Policy, it does not owe a duty to indemnify McFadden's in the Dunbar action because (1) the A&B Endorsement provided a $200,000 sublimit of liability in the aggregate arising out of or resulting from "assault and/or battery" and (2) the A&B sublimit was eroded by Liberty's defense costs and payment of the Dwyer settlement.

McFadden's disputes Liberty's characterization of the cause of Mr. Dunbar's injuries, however. McFadden's claims that Mr. Dunbar's injuries did not arise out of an assault and battery, but rather out of negligence. Specifically, McFadden's asserts,

> Mr. Dunbar was injured because he was served excessive amounts of alcohol by the staff at McFadden's while he was visibly intoxicated. As a result, Mr. Dunbar fell to the ground (without being touched) during an altercation with the McFadden's bouncers. A poorly trained bouncer attempted to calm Justin down by climbing on top of him and inadvertently drove his knee into Justin's ankle, resulting in a fractured ankle. Plaintiff had abandoned any claim of Assault or Battery by the time the case went to arbitration since such a claim was not supported by the facts.

McFadden's Resp. at ¶ 3. McFadden's relies on the findings of the neutral arbitrator in the Dunbar action wherein the arbitrator found McFadden's partially liable for Mr. Dunbar's injuries based on violations of the Pennsylvania Dram Shop Act and McFadden's security practices. Arbitration Award ¶¶ 13-15, 17. As a result, McFadden's contends that the $200,000 eroding sublimit provided in the A&B Endorsement is inapplicable and the $1,000,000 general limit for all other claims applies. McFadden's argues that Liberty owes a duty to indemnify McFadden's in the Dunbar action due to the arbitrator's findings of negligence and failure to find any assault and battery.

Liberty brings this Declaratory Judgment Complaint claiming: the A&B Endorsement applied to the Dunbar action (Count I); the insurance sublimit was eroded by Liberty's defense costs (Count II); interpleader (Count III); and it owed no duty to indemnify McFadden's against any claim for punitive damages (Count IV). Liberty now moves for summary judgment on these claims.

McFadden's also moves for summary judgment, arguing: (1) Liberty's assault and battery sublimit does not apply to the underlying Dunbar action; and (2) Liberty's declaratory judgment action fails due to Liberty's failure to join Dunbar as an indispensable party.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" issue exists where there is a "sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party." Byrne v. Chester Cnty. Hosp., No. 09-889, 2012 WL 4108886, at *2 (E.D. Pa. Sept. 19, 2012) (citing Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). "A factual dispute is 'material' if it might affect the outcome of the case under governing law." Id. All factual doubts should be resolved and all reasonable inferences drawn in favor of the nonmoving party. Torretti v. Main Line Hosp., Inc., 580 F.3d 168, 172 (3d Cir. 2009) (citing DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216 (3d Cir. 2007)). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). "[U]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Byrne, 2012 WL 4108886, at *2. The movant is responsible for "informing the court of the basis for its motion for summary judgment and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." Id. (citing Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986)).

## DISCUSSION

The Court will first address the arguments in Liberty's Motion for Summary Judgment and then turn to the remaining issue in McFadden's summary judgment motion pertaining to joinder of Mr. Dunbar.

### I. Liberty's Duty to Defend and/or Indemnify McFadden's

An insurer's duty to defend an action against its insured depends on whether the third party's underlying complaint against the insured triggers coverage under the insurance policy. Regent Ins. Co. v. Strausser Enter., Inc., 902 F. Supp. 2d 628, 635 (E.D. Pa. 2012) (citing Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999)). If the third party complaint contains some allegation potentially triggering coverage under the insurance policy, then the insurer will be obligated to defend against the entire action. Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985). The insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim. Britamco Underwriters v. O'Hagan, No. Civ. 94-1160, 1994 WL 477551, at *3 (E.D. Pa. Sept. 2, 1994). The insurer has no duty to defend when it is apparent from the face of the complaint that none of the injuries alleged in the complaint falls within the coverage of the policy. Id.

To determine whether the insurance policy applies to the factual allegations in the complaint, courts employ a two-step analysis. At step one, the insured bears "the initial burden of showing that claims fall squarely within the policy's coverage." Markel Intern. Ins. Co. v. 2421 Salam, Inc., Nos. 08-1052, 08-2484, 2009 WL 1220557, at *3 (E.D. Pa. Mar. 31, 2009) (quoting Investors Ins. Co. of Am. v. Tacony Palmyra Billiard Club, Civ. A. No. 06-4368, 2008 U.S. Dist.

LEXIS 61566, at *5 (E.D. Pa. Aug. 12, 2008)). At step two, the insurer bears the burden of demonstrating the applicability of a policy exclusion to the third party complainant's claims. Id. If the insurer satisfies this burden, then the insurer has no duty to defend the claim.

The duty to defend is distinct from and broader than the duty to indemnify. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005). If there is no duty to defend, then there is no duty to indemnify. Id. A "duty to indemnify arises only if it is established that the insured's damages are actually covered by the terms of the policy." Regent Ins. Co., 902 F. Supp. 2d at 636-37 (citations and internal quotation marks and omitted). Therefore, the insurer need not indemnify the insured for conduct falling outside the scope of the policy for which the insured was found liable. Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F. Supp. 1090, 1094 (E.D. Pa. 1994).

### A. The A&B Endorsement Limited Liberty's Duty to Defend and Indemnify McFadden's

Before the Court turns to the two-step analysis outlined above to determine whether the factual allegations in the underlying complaint triggered coverage under the Policy, the Court will address the party's dispute concerning the material in evidence admissible to resolve the extent of Liberty's duty to defend and/or indemnify McFadden's.

#### 1. No Extrinsic Evidence

McFadden's contends that it is liable for negligently serving Mr. Dunbar excessive amounts of alcohol in violation of the Pennsylvania Dram Shop Act and employing negligent security practices in removing Mr. Dunbar from the bar. To support its argument, McFadden's relies on Mr. Dunbar's Second Amended Complaint, his Arbitration Memorandum, and the Arbitration Award. See McFadden's Mot. for Summ. J.; McFadden's Resp. First, McFadden's acknowledges that in his Second Amended Complaint, Mr. Dunbar pleaded both negligence and

-12-

assault and battery. However, McFadden's contends that as the Dunbar action proceeded to arbitration, Mr. Dunbar revised his claims consistent with facts learned through discovery—that his injuries resulted solely from McFadden's negligence, not assault and battery. See McFadden's Resp. ¶¶ 12-14, 38-39. Specifically, McFadden's draws on Mr. Dunbar's Arbitration Memorandum wherein he focused on McFadden's negligence and withdrew all claims for assault and battery and allegations that McFadden's security staff "martial arts style stomp[ed]" on his leg and ankle. See id.; McFadden's Mem. of Law in Opp'n to Liberty's Mot. for Summ. J. at 8. The reference to the "martial arts style stomp" came directly from Mr. Dunbar's original complaint, which had been amended twice prior to arbitration. See Dunbar Compl. ¶ 15. Next, McFadden's emphasizes the neutral arbitrator's decision wherein the arbitrator found McFadden's partially liable for Mr. Dunbar's injuries based on its security practices and violations of the Pennsylvania Dram Shop Act. See Arbitration Award ¶¶ 13-15, 17. Absent from the arbitrator's decision was a finding of assault and battery. Id.

Liberty counters that McFadden's attempts to have this Court inappropriately consider extrinsic evidence when determining Liberty's duty to defend and indemnify. Liberty also asserts that Mr. Dunbar's Second Amended Complaint is the product of artful pleading to secure coverage and avoid the A&B Endorsement in the Policy. Consequently, Liberty urges this Court to examine the factual allegations contained in the underlying complaint to determine whether coverage applies.

Pursuant to Pennsylvania law, the Court shall not consider matters outside the four corners of the underlying complaint to determine whether a duty to defend exists. See State Farm Fire & Cas. Co. v. The Estate of Mehlman, 589 F.3d 105, 108 n.3 (3d Cir. 2009) (refusing to examine

-13-

facts outside of the underlying complaint when determining an insurer's duty to defend "even though there was discovery . . . in which more germane facts may have surfaced"); First Mercury Ins. Co. v. Rossi, No. 10-1097, 2011 U.S. Dist. LEXIS 35845, at *22 (E.D. Pa. Mar. 31, 2011) ("Pennsylvania follows the minority rule and excludes extrinsic evidence in determining the duty to defend."). An insurer's obligation to defend its insured is fixed **solely** by the allegations in the underlying complaint. Nationwide Mut. Fire Ins. Co. v. Malofiy, No. 10-2410, 2011 U.S. Dist. LEXIS 29702, at *18 (E.D. Pa. March 22, 2011) (quoting Erie Ins. Exch. v. Fidler, 808 A.2d 587, 590 (Pa. Super. Ct. 2002)). The court must only consider the allegations contained in the underlying third party complaint and compare those allegations to the language of the insurance policy. Id. at *20. Thus, the causes of action pleaded are not determinative; rather, the court looks at the **factual allegations** contained in the third party complaint. Markel, 2009 WL 1220557 at *2 (citing Haver, 725 A.2d at 745). Courts have reasoned that "to allow the manner in which the complainant frames the request for redress to control in a case . . . would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies." Haver., 725 A.2d at 745; see, e.g., Fidler, 808 A.2d at 590 (same).

Given the rule against the examination of extrinsic evidence, this Court declines to consider the Arbitration Award or Mr. Dunbar's Arbitration Memorandum when determining whether coverage was triggered under the Policy. Likewise, the Court will not consider Mr. Dunbar's original complaint, but will limit its analysis to the factual allegations in Mr. Dunbar's Second Amended Complaint and the provisions in the Policy. The Court will now proceed with the two-step inquiry outlined above.

-14-

2. *Step One: The Factual Allegations in the Underlying Complaint Fall Within Policy Coverage*

McFadden's bears the initial burden of showing that Mr. Dunbar's claims fall within the Policy's coverage. See Markel, 2009 WL 1220557 at *3. Liberty does not dispute that Mr. Dunbar's claims are covered by the Policy. Rather, Liberty challenges the extent of its coverage.

The Court agrees that Mr. Dunbar's Second Amended Complaint sets out sufficient factual allegations to trigger coverage under the Policy. Firstly, in his Second Amended Complaint, Mr. Dunbar alleges alternative theories of recovery sounding in negligence and assault and battery. See Dunbar Second Am. Compl. ¶¶ 32-33, 35-41. These claims are sufficient to trigger coverage under either the Policy's CGLC or LLC sections. The CGLC states, in relevant part, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." Liberty Compl. at Ex. A, CG00011207 at 1. The LLC provides, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." Id. at Ex. A, CG00331207 at 1. Since Mr. Dunbar alleges that he sustained his injuries due to McFadden's violation of The Pennsylvania Dram Shop Act and its security staff's negligent conduct, as well as an assault and battery, McFadden's has met its burden at step one.

3. *Step Two: The Liability Limits in the A&B Endorsement Applies to Mr. Dunbar's Claims*

At step two, Liberty bears the burden of demonstrating that the limits in the Policy apply. See Markel, 2009 WL 1220557 at *3. In other words, Liberty must show that the provisions contained in the A&B Endorsement amending both the CGLC and LLC apply to Mr. Dunbar's

claims. The Court will first focus its analysis on the Policy and then compare the Policy to the four corners of Mr. Dunbar's Second Amended Complaint. See State Auto. Mut. Ins. Co. v. Lucchesi, 563 Fed. App'x 186, 189 (3d Cir. 2014) ("To determine whether a claim potentially falls within the scope of a policy, we compare the 'four corners of the insurance contract to the four corners of the complaint.'" (quoting Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526 (2010))).

a.   Policy Interpretation

When interpreting a contract, a court should enforce the clear and unambiguous language within the contract. See id. at 189-90 (citing Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170 (Pa. 2006)). An insurance "policy must be read as a whole and its meaning construed according to its plain language." Rossi, 2011 U.S. Dist. LEXIS 35845, at *9 (citing Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)).

Here, the A&B Endorsement amended the limits sections of both the CGLC and the LLC. See Liberty Compl. at Ex. A, CGL-1414-1210; id. at Ex. A, CGL-1417-1210. The A&B Endorsement provided a $200,000 sublimit of liability for assault and battery. Id. at Ex. A, CGL-1414-1210. The A&B Endorsement further stated that the $200,000 Assault & Battery Aggregate Limit was the maximum that Liberty would be required to pay for "injury arising out of assault and/or battery as the result of selling, servicing or furnishing of alcoholic beverages; and/or damages because of bodily injury or property damage . . . arising out of assault and battery as the result of all occurrences" Id. at Ex. A, CGL-1417-1210 (internal quotation marks omitted).[1] The

---

[1]  Pursuant to the terms of the Policy, the assault and/or battery must have resulted from an occurrence or the sale, servicing, or furnishing of alcoholic beverages. At issue, is whether McFadden's security staff's conduct should be considered an assault and/or battery or negligent. The parties have not briefed the cause of the alleged assault and/or battery. As such, the Court will limit its analysis to whether an assault and/or battery occurred when Mr. Dunbar was asked to leave McFadden's.

language of the A&B Endorsement in the Policy is clear: the amount Liberty is obligated to pay for

an assault and/or battery is limited to $200,000.

The Policy terms "assault" and "battery" are also clear and unambiguous. Specifically, the

A&B Endorsement defined "assault and/or battery" as

1.   actual or threatened assault or battery whether caused by or at the instigation or
     direction of any insured, his "employees", patrons or any other person;
2.   the failure of any insured or anyone else for whom any insured is legally
     responsible to prevent or suppress assault or battery; or
3.   the negligent:

     a.   employment;
     b.   investigation;
     c.   supervision;
     d.   training; or
     e.   retention

     of a person for whom any insured is or ever was legally responsible and
     whose conduct is described by 1. or 2. above.

Id. at Ex. A, CGL-1417-1210 at 2. As such, the A&B Endorsement expanded the definition of

assault and/or battery to include negligent conduct related to the hiring, supervision, and retention

of the insured's staff.

Moreover, the Third Circuit has noted that, in Pennsylvania, an individual is guilty of an

assault "if he/she 'attempts to cause or intentionally or recklessly causes bodily injury to another'

or 'attempts by physical menace to put another in fear of imminent serious bodily injury.'" Essex

Ins. Co. v. Starlight Mgmt. Co., 198 Fed. App'x 179, 183 (3d Cir. 2006) (quoting 18 Pa. Cons.

Stat. § 2701). The Third Circuit defined battery as "whenever the violence menaced in an assault is

actually done, though in ever so small a degree, upon the person." Id. (quoting Renk v. City of

Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (internal quotation marks omitted)). These definitions

are consistent with those for "assault and/or battery" found in the Policy.

Next, the A&B Endorsement used the phrase "arising out of." Pennsylvania courts have concluded that the phrase "arising out of" is unambiguous. See, e.g., Forum Ins. Co. v. Allied Sec., Inc., 866 F.2d 80, 82 (3d Cir. 1989) (defining the term "arising out of" in connection with an assault and battery exclusion and finding no ambiguity); Essex Ins. Co. v. RMJC, Inc., No. 01-4049, 2007 WL 3243628, at *3 (E.D. Pa. Nov. 1, 2007) (concluding that the term "arising out of" is unambiguous); McCabe v. Old Republic Ins. Co., 228 A.2d 901, 903 (1967). Under Pennsylvania law, "arising out of means causally connected with, not proximately caused by. But for causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy." Forum Ins. Co., 866 F.2d at 82. "Courts have uniformly interpreted 'arising out of' as providing liability if the alleged injuries would not have occurred 'but for' the operations or negligence of the named insured." Maryland Cas. Co. v. Regis Ins. Co., Civ. A. No. 96-CV-1790, 1997 WL 164268, at *3 (E.D. Pa. Apr. 9, 1997).

Liberty bears the burden of showing that Mr. Dunbar would not have sustained his injuries "but for" the assault and battery of McFadden's security staff.

b. Factual Allegations of the Underlying Complaint

The Court will now examine Mr. Dunbar's Second Amended Complaint. In doing so, the Court must "accept as true the factual allegations of the underlying complaint." Lucchesi, 563 Fed. App'x at 190 (internal citation and quotation marks omitted). These factual allegations control, not the causes of action pleaded or the manner in which the third party plaintiff couches the claims within the underlying complaint. Markel, 2009 WL 1220557 at *6.

Here, Mr. Dunbar alleges that he suffered serious injuries including a shattered right leg and ankle, trimalleolar open ankle fracture, internal and neurological injuries, and chronic pain.

See Dunbar Second Am. Compl. at ¶ 26. According to Mr. Dunbar, he suffered these injuries after: a "bouncer attempted to control [him] to the ground" and "horse-collar tackl[ed]" him causing him injuries; a second bouncer took him down, "used improper technique and failed to control [the bouncer's] body" resulting in the "bouncer's knee swinging out and landing on Justin's ankle," further injuring Justin. Id. at ¶¶ 18-22. Mr. Dunbar characterized this altercation as an "attack" and stated that McFadden's bouncers "viciously attack[ed] him." Id. at ¶ 23, 36. He attributed his injuries to McFadden's conduct. See id. at ¶ 26. In addition to negligence, Mr. Dunbar brought a cause of action for assault and battery, and accused McFadden's security staff of "intentionally, recklessly, or negligently initiat[ing] violent bodily harm on [him], by striking [his] body." Id. at ¶ 39. Although passively drafted to invoke negligence, these factual allegations clearly demonstrate that the conduct of McFadden's security staff constituted an assault and battery under Pennsylvania law and the Policy. Mr. Dunbar's injuries resulted from this assault and battery.

To avoid triggering the A&B Endorsement, McFadden's highlights the theories of negligence included in the underlying complaint, namely Mr. Dunbar's allegations of McFadden's negligent security practices and violations of The Pennsylvania Dram Shop Act. However, it is clear to the Court that Mr. Dunbar's injuries arose out of an assault and battery, and moreover, that the assault and battery was the "but for" cause of those injuries. As such, Mr. Dunbar's factual allegations fall squarely within the scope of the A&B Endorsement.

Firstly, as previously discussed, the A&B Endorsement **expanded** the definition of assault and battery to include, *inter alia*, negligent conduct related to the hiring, supervision, and retention of McFadden's staff. Liberty Compl. at Ex. A, CGL-1417-1210 at 2. Consequently, this provision is broad enough to cover Mr. Dunbar's negligence claims connected with the assault and battery he

-19-

experienced at the hands of McFadden's security staff. <u>Compare</u> <u>id.</u> <u>with</u> Dunbar Second Am.

Compl. ¶ 32. Secondly, the A&B Endorsement amended the Assault and Battery Aggregate Limit

to cover injuries arising out of assault and/or battery as the result of an occurrence or the sale,

service, or furnishing of alcohol. Liberty Compl. at Ex. A, CGL-1417-1210 at 1. Again, Mr.

Dunbar's claims fall within the scope of the A&B Endorsement.

Accepting as true the factual allegations in the underlying complaint, the Court finds no

genuine dispute regarding whether Mr. Dunbar's injuries would not have occurred "but for" the

assault and battery of McFadden's staff. The Court concludes that the plain language of the A&B

Endorsement applies to the claims in Mr. Dunbar's underlying complaint. As such, Liberty's duty

to defend and indemnify McFadden's is limited to the $200,000 limit provided in the A&B

Endorsement. The Court grants Liberty's Motion for Summary Judgment and denies McFadden's

Motion for Summary Judgment with respect to the application of the Policy's $200,000 sublimit

for assault and/or battery to the claims in Mr. Dunbar's underlying complaint.

### B. Liberty's Payment of Defense Costs Eroded the A&B Sublimit

Liberty asserts that the A&B sublimit is eroded by Liberty's payment of defense costs. The

Policy provided that all expenses related to Liberty's duty to defend McFadden's against any suit

seeking damages were to be included within the applicable limit of insurance, which was $200,000

for an assault and/or battery. <u>Id.</u> at Ex. A, CGL-1415-1210. McFadden's does not dispute that

Liberty's defense costs for the Dunbar action and payment of the Dwyer settlement exceeded

$200,000. <u>See</u> McFadden's Resp. ¶¶ 56-59. Accordingly, the Court concludes that the $200,000

limit has been expended and Liberty has no duty to indemnify McFadden's. The Court grants

Liberty's Motion for Summary Judgment with respect to payment of defense costs for the Dunbar

action.

### C.  Payment of Punitive Damages

Liberty moves for summary judgment as to its duty to defend against allegations for punitive damages in the Dunbar action. In Pennsylvania, insurers owe no duty to pay claims for punitive damages against the insured. See, e.g., Esmond v. Lisico, 224 A.2d 793, 800 (Pa. Super. Ct. 1966) (holding that public policy does not permit a tortfeasor to shift the burden of punitive damages to his insurer); Creed v. Allstate Ins. Co., 529 A.2d 10, 12 (Pa. Super. Ct. 1987) (concluding that "where the insurer has only agreed to indemnify for bodily injury and property damage," not punitive damages, the insurer "has no obligation to provide indemnity for punitive damages"). Here, in the CGLC, Liberty agreed to pay for bodily injury or property damage to which the Policy applied. Liberty Compl. at Ex. A, CG00011207 at 1. Additionally, in the LLC, Liberty agreed to pay for injury to which the Policy applied. Id. at Ex. A, CG00331207 at 1. Liberty did not agree to indemnify McFadden's for claims for punitive damages. Consequently, Liberty has no obligation to defend or indemnify McFadden's for Mr. Dunbar's claims for punitive damages. The Court grants Liberty's Motion for Summary Judgment as to the punitive damages claims.

## II. Failure to Join Justin Dunbar to the Liberty Litigation

Liberty did not name Mr. Dunbar as a defendant in the instant declaratory judgment action. McFadden's asserts that, pursuant to Federal Rule of Civil Procedure 19,[2] Mr. Dunbar is an indispensable party without whom this Court lacks subject matter jurisdiction.

---

[2]  Rule 19(a) provides,
      **(a) Persons Required to Be Joined if Feasible.**
        **(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

McFadden's claims that Mr. Dunbar is a necessary and indispensable party because the outcome of this declaratory judgment action will determine whether Liberty is required to indemnify McFadden's for Mr. Dunbar's arbitration award. McFadden's relies on the decision of the Pennsylvania Supreme Court in Vale Chem. Co. v. Hartford Accident and Indem. Co., 516 A.2d 684, 687-88 (Pa. 1986). In Vale, a drug manufacturer brought a declaratory judgment action against two insurers to determine whether the insurers had a duty to defend and indemnify the drug manufacturer in an underlying suit. However, the drug manufacturer failed to join the plaintiff from the underlying action who alleged that she suffered from cancer due to the manufacturer's sale of a drug to her mother during pregnancy. The Vale court held that, pursuant to the Pennsylvania Declaratory Judgment Act, 42 Pa. C.S.A. § 7540, all interested parties should be joined before a declaratory judgment can issue. 516 A.2d at 687-88. Joining interested parties afford them the opportunity to be heard. Id. at 688. The court concluded that the underlying plaintiff was an interested and indispensable party because the declaratory judgment related to coverage of her claims. Id. As a result, the Vale court found that the third party plaintiff's absence deprived the district court of subject matter jurisdiction over the declaratory judgment action. Id. McFadden's attempts to apply the court's reasoning in Vale to the instant action.

---

      **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

      **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

        **(i)** as a practical matter impair or impede the person's ability to protect the interest; or

        **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**(2)** *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

**(3)** *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

Liberty counters—and this Court agrees—that McFadden's reliance on Vale is misplaced. Liberty relies on the Third Circuit's decision in Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216 (3d Cir. 2005). In Treesdale, appellants were allegedly injured due to exposure to products manufactured or sold by the insured and they sought to intervene in an insurance coverage declaratory judgment action between the insurer and insured. Appellants claimed that they were entitled to intervene because they were indispensable parties under Rule 19(a) and sought to apply the Vale court's interpretation of the Pennsylvania Declaratory Judgment Act. The Third Circuit, however, found that the court's ruling in Vale was inapplicable to the federal court declaratory judgment action: "Under Erie, 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" Treesdale, 419 F.3d at 228 (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)). The Third Circuit held that Vale addressed procedural and jurisdictional issues, namely that an injured third party plaintiff is an indispensable party in a suit to determine coverage in a Pennsylvania state declaratory judgment action. Id. at 229. However, Vale did not address substantive issues, and as such, Erie did not require the district court to apply state law. Id. Accordingly, state law requiring the injured third parties to be joined did not apply to the federal declaratory judgment action in Treesdale. Similarly, this Court will apply federal rules respecting declaratory judgment actions to this diversity matter.

Federal Rule of Civil Procedure 19 establishes whether joinder of a party is compulsory. First, the Court must determine whether the absent party is necessary under Rule 19(a). If so, then the absent party should be joined. However, if the party's joinder is not feasible inasmuch as it would defeat the Court's diversity jurisdiction, the Court should then turn to whether the absent party is indispensable under Rule 19(b). Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306,

312 (3d Cir. 2007). If yes, then the court should dismiss the action for lack of subject matter jurisdiction. Id. at 319.

### A.  Rule 19(a) – Persons Required To Be Joined if Feasible

Pursuant to Rule 19(a), the joinder of a party is necessary if it is feasible. Firstly, under Rule 19(a)(1)(A), a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties." In other words, a court looks to whether it can grant complete relief to the persons already parties to the action. The effect that the court's decision has on absent parties is immaterial. See Gen. Refractories Co., 500 F.3d at 313 (citing Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 705 (3d Cir. 1996)).

In this case, Mr. Dunbar's absence does not prevent the Court from granting relief to the parties. Liberty filed this action seeking a declaration from this Court regarding the scope of its coverage and its duty to defend and indemnify McFadden's. Liberty's Complaint seeks this Court's interpretation of the Policy as it relates to the factual allegations in Mr. Dunbar's underlying complaint. Liberty did not bring any allegations against Mr. Dunbar. Therefore, the only parties necessary to this dispute are Liberty and McFadden's. See, e.g., Nat'l Cas. Co. v. Young, Civ. A. No. 07-CV-04836, 2008 WL 4414719, at *1 (E.D. Pa. Sept. 23, 2008) (reasoning that third-party plaintiff in an underlying action was not a "necessary" party because the declaratory judgment complaint did not state any allegations or claims against third-party plaintiff, and the only parties involved in the dispute were the insurer and its insured). The Court may grant complete relief to the parties absent Mr. Dunbar.

Secondly, under Rule 19(a)(1)(B), a party must be joined if

that person claims an interest relating to the subject of the action and is so situated
that disposing of the action in the person's absence may:

-24-

> (i)    as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The term "interest" in this context means a legally protected interest, not merely a financial interest in the action. See, e.g., Treesdale, 419 F.3d at 230 ("[A] party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action." (quoting Spring-Ford Area Sch. Dist. v. Genesis Ins. Co., 158 F. Supp. 2d 476, 483 (E.D. Pa. 2001) (internal quotation marks omitted))); Young, 2008 WL 4414719 at *2 (same).

Here, Mr. Dunbar does not have a legal interest relating to the subject of the instant action. McFadden's points to Liberty's duty to indemnify McFadden's, which does no more than to implicate Mr. Dunbar's financial interest in the declaratory judgment action—his ability to recover payment for the arbitration award. Mr. Dunbar's financial interest is insufficient to make him a necessary party to this action under Rule 19(a). Having found that Mr. Dunbar is not a necessary party under Rule 19(a), the Court also concludes that he is not an indispensable party under Rule 19(b). See Janney Montgomery Scott, Inc. v. Shephard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993) (stating that if an absent party is not "necessary" under Rule 19(a), the court need not decide or reach whether the party is "indispensable" pursuant to Rule 19(b)).

McFadden's Motion for Summary Judgment as to Liberty's failure to join Mr. Dunbar to its declaratory judgment action is denied.

## CONCLUSION

The Court concludes that 1) Liberty does not have a duty to indemnify McFadden's for the $350,000 arbitration award in the Dunbar action; 2) the Assault and Battery sublimit endorsement, which limited Liberty's coverage to $200,000 for an assault and battery applies to the Dunbar

action; 3) Liberty's payment of defense costs in the Dunbar action eroded the Assault and Battery sublimit; and 4) the Policy does not cover McFadden's claims for punitive damages. The Court further concludes that Justin Dunbar is not an indispensable party to Liberty's declaratory judgment action. For the foregoing reasons, the Court enters summary judgment in favor of Liberty and denies McFadden's Motion for Summary Judgment.